Navatek v. Navatek, LTD Good morning. Jay Freetime on behalf of Ian Jarrett. Do you have any questions? Is Mr. Jarrett paid overtime? Yes, he was paid overtime, Your Honor. Semen aren't paid overtime? The semen are exempt from overtime and within that company they did not get paid overtime. So what does it mean that he was paid overtime? Well, it means that he's a shoreside worker, the same as he's been for the past four years up until the time that he had the accident. And the company saw him as such? The company saw him as such and they treated him as such and they did the same thing with him as they did with everybody else who was a shoreside worker at the time. Picture this, a new contract, a great idea to solve the traffic problem. We're going to start ferrying people from one end of the island to the other. No one's ever made this thing work because the costs are really big. They get this boat, they fix it up, they get the thing ready. The guy's working as a shoreside worker every day, working on the boat. And one of the things, as a shoreside worker, when the other passenger vessels come into the dock, Jarrett did the same thing he did when he got hurt. He would carry sodas on to the, you know, supplies and sodas, onto the other vessels that he had been working during the four years. So the actual act of loading the sodas onto the vessel was a shoreside function. Plus, during the ferrying experience, the ferry goes out and goes three hours, you know, from 6.30 in the morning until 9.30 in the morning. It's one trip. The ferry comes back to the dock, and then it goes out 3.30 to 6.30, and it comes back. Now, if you do the math on the hours, Jarrett shows up at work at 3.30. He's getting paid. You look at the records, and the records were really sketchy because the company had trash-canned most of it, but they did have some of the records. He starts working at 3.30, so he gets to go out on the morning shift, but he doesn't go out on the morning sail, but not on the afternoon sail. So when you look at the calculations about 70% of his time and stuff like that, that's not true at all. He's working at most 30% of the time, 20% of the time at sea. And when he's at sea, he's still doing this specialized repair kind of stuff that he was doing before. He's a mechanic, and these are like Z-drive propeller, you know, high-end, high-tech stuff. And, of course, okay, well, they have him take some tickets, and they put him on a little fancy T-shirt and say it's a uniform, but in reality, this is a shore-side worker, and really, let's cut to the chase. What's this about? This is about a guy who gets a back injury, and it's one of these, like, sail-back injuries. This guy has got a back injury problem for the rest of his life. Internally, the insurance company, who's privy to the records, knows what's going on. They get out Ebby Black. You may not know about Ebby Black, but look at Cabral. That was another one of my cases that went up. Another one, she's a very knowledgeable player, serious lawyer, working as an insurance claims person, brings the guy over while he's at the new job and says, hey, how would you like to settle this case? Would you like a little bit of money? Now, they've already filed an LS-202. I think you know longshore stuff. I don't. What's an LS-202? Okay, LS-202 is the first recorded injury by the employer required under the Longshore Act. So they filed it. They filed it. He hasn't. He doesn't want to say no. He's a guy who's hurt. He figures he's going to be taken care of. They file it. They initiate the process under the Act. They know they can't settle this thing for $10,000. They've got a back injury that's going to be requiring surgeries over his lifetime, lifetime care, vocational rehabilitation. Normally, guys like myself are in here arguing with you, making a scene, and I want all the big damages, you know. We're here for medical care. This guy needs to go to a doctor, and for years, I can't get him into a doctor. I understand. Okay, LS-202, right? No, I got that part. But this is unfamiliar territory or, you know, the bad metaphor. I'm at sea on this one. Just explain to me the difference in coverage under the Jones Act compared to the Longshore Harbor Workers Act that makes a difference to you. Remedial, right? Yeah, yeah. Let me talk about what I'm not interested in. Under the Jones Act, you get pain and suffering and lost wages. All the big damages where it takes a third of the fee, you know, a third as a fee, big dollars. That's why you got all these guys, salesmen, coming to you all the time saying, oh, I want this guy to be a seaman. I want to, you know, be a seaman. I'm not here doing that, all right? I'm arguing the other side, which is why all of the precedent about what's a seaman, what's a seaman, is where they're trying to take John Henry, you know, who's walking across, just happens to be on a bridge going across some water, or standing on the floor. Yeah, yeah, yeah, come on, come on, get to the point. So under the Longshore Act, you can't settle a claim without the Department of Labor overseeing it. That's the 8-I settlement procedure. That's what they want to get them out of. And what remedy is available under the Longshore Act that is relevant to him that is not available under the Jones Act? Lifetime medical care. You get maintenance and cure, you know, which means, enforcing maintenance and cure. I mean, you know, nobody's been able to get, you know, before Reagan, maintenance and cure meant that you went to the public health hospital. After Reagan, you don't even get that. You guys go to the doctor. You can't get medical care. Okay, okay. In other words, if he's covered not under the Jones Act, but instead under the Longshore, the LWH, he gets a much greater amount of money for care for his back, lifetime care of some sort, which is not entitled to under the Jones Act. No. Okay, that's what I wanted to know. Okay, I have one more question on the Jones Act. Sure. Now, the settlement, how do we know that the settlement, the $10,000 was under the Jones Act and not under... Oh, signed a Seaman's release. You guys ought to read some of these Seaman's release cases. You know, they tell them, sign this. It's giving up all your rights. A settlement under the Jones Act, they give you the money, you sign a piece of paper. It's called a red line release. It's got little arrows that says red. You know, you're picking up everything. So that's the Seaman's release. Now, is it possible to recover under both the Jones Act? Is it possible to recover under both the Jones Act and the Longshoreman's Act? Above. Meaning, you know, if you're excluded from remedies on both, but, no, you've given them up. That's the world of recourse available to a Shoreside or Seaman, a maritime employee. And like I said, the question is... I'm sorry, I didn't understand your answer. One or the other? One or the other. Yeah, you know, that's what I... You know, say Aristotle, you know, consider the principle of non-contradiction. A thing cannot be and be and not be at the same time for the same purposes. You know, it's got to be one or the other. For somebody who started out with no argument, you've got a lot to say. Does that mean our case in Figueroa is wrong? No. No, no. Figueroa, it says you can get, in certain circumstances, covered under both acts. He did that, right? The $10,000 that he got in Figueroa. That's right. That's what Figueroa really means. It's offset. It's offset. But Figueroa says something else. You may or may not need that. But Figueroa seems as least as... And I read it a couple of times, because I still don't understand how this can be so. But as I read Figueroa, it says, in certain circumstances, someone's going to be covered under the act, yet simultaneously be a Seaman under the Jones Act. I think that's what we have here. And the question then becomes, well, who gets to make the choice of remedies? Should it be the employer, or should it be the claimant, and say which way I want to pursue? The claimant did not... ALJ said, we pursued his Jones Act remedy. That's ridiculous. He had a longshore claim pending, and they came and settled it as a Jones Act, so they could give him cash without any government supervision. Without counsel. Without counsel. No, and it wasn't just the claims person. It was Evelyn. I mean, she's a... Who's Evelyn? Evelyn Black. She was a prosecutor, and... Is she in the courtroom? No, but she's a great... She's the one with sharp teeth, right? I saw her downstairs. That's right. And what it is, is she works as a claims person, and she's a trained lawyer, knowledgeable about maritime law. Comes out only at night, and things like that. No, she's a wonderful person. The point is that there's a disproportionate number of people... Seamen traditionally should be protected, which is why they always throw out these seamen's releases. But we're not trying to make them the seamen. We're trying to get them the longshore rights. They should be a stock. What difference does it make to the employer? Jones or LH? Oftentimes, there are different insurance companies. Jones Act is covered by T&I Clubs. Longshore has a different group of approved by Justice Department insurers or qualified self-insurers. There's a difference in... Here's what it makes to the company. If there's no liability, like a guy's walking up a little thing with no negligence, there's no negligence, well, then you want him to be a Jones Act person because he isn't going to recover. If there is tremendous negligence and huge damages, well, then you want him to be a workers' comp guy because he can't get the sexy damages, pain and suffering and all the lost wages and all the... You see what I mean? So they're making a decision, and it wasn't for what's in the best interest of the injured crewman. But Judge Trott's question was, what difference does it make to the company? You're telling me what difference it makes to the claimant. Does it just... The claim has been made against the insurance company, and therefore, insurance premiums are going to go up? Does that mean that's going to happen? The insurance company is the company, technically, right? They're the ones paying out. We didn't sue an insurance company. They came in to represent it, and then they're making claims in what's in the best interest of their position. So here they're trying to hang on to their $10,000 settlement as well. That's right. And it's going to cost somebody a lot more if it goes LHWCA. This isn't a giant case. This is about a guy who needs back care, and if the facts are in any way compelling to you, he then is sold, not sold, but they sell the boat to Atlantis, and he goes along with Atlantis, still taking care of the shoreside maintenance. He gets another back injury, and then what happens is, they say, oh, he's now back to how bad he was after he signed the Jones Act release, so we don't owe him any more medical care. Do you understand what I just tried to say to you? So he's really caught in a bind, and he's been trying to go to the doctor for years now. He gets these injections. It makes him better. He goes to work, takes care of the kids, all that equity stuff. Okay. Your time's up. Thank you very much. That's the last time I ask you a question. Good morning, Your Honors. I'm Robert Kessner here on behalf of Navitek. Mr. Jarrett did indeed start out with my company as a maintenance worker. My company entered into a contract with the state for a ferry demonstration service. Did you ever pay him as if he were a seaman? That is to say, it seems to me sometimes as though it's undisputed in the record that you paid him wages and then overtime, which is not consistent with paying a seaman. We did indeed pay him overtime. So you were recognizing him as an LHWC agent? No, sir, we were not. Well, if he was a seaman, he wouldn't get overtime. He had been asked if he would be interested in working on this ferry project. The Coast Guard required of my clients that they have a certain complement of crew that had Coast Guard issued certificates. You know, you slide it off the question. I think the question is you paid him as if he were a worker covered under the LHWCA. Is that correct? No, we paid... Were you sure he was such a worker? He was working as a seaman? No. Whether we chose to give him overtime, whether that was required or not. No, I'm asking a question. If he were working as a seaman covered under the Jones Act, would you have been paying him overtime? We were, in fact, doing that. That's not my question. If he were, in fact, a seaman covered under the Jones Act, would it have been appropriate under the law for you to have paid him overtime? I believe we had every right to pay him overtime because we asked him to do not only the work the boys were supposed to do. You know, you don't answer my question, and you could decide not to answer it if you don't want to. I really don't know the answer to that, Your Honor. I do know that Mr. Jarrett... Is a seaman entitled to overtime under the Jones Act? I don't see why an employer could choose not to. That's not the question. You don't have to answer the question. Entitled to? No, perhaps not entitled to. You see, as you can tell, we're kind of hung up on this. The company seems to have recognized him by paying him overtime as not a Jones Act seaman. No, I would disagree in this sense. Mr. Jarrett is aboard that vessel between the 7th of October and the 17th of December as a crew member. He's got safety functions that he's required to do. He has tested, been tested by the Coast Guard, has received an unrated license which was required for the operation of the vessel. He works on the vessel in furtherance of its purpose. He counts passengers. He reports to the captain how many passengers they have. He's in charge of a concession on the vessel that sells things to the passengers. He's in charge of stocking that concession. He's wearing a uniform provided by the employer. He had a substantial connection to the vessel, and he had that substantial connection for a significant period of time. Is this one of these law school-like questions where the facts are set up so he very well might be both, covered by the LHWCA and the Jones Act seaman on the facts? I don't think that this falls within the narrow exception where that can occur. Well, it sure sounds on the facts like it might. I mean, he seems to be doing both jobs at the same time. What you are saying essentially is if we were to take a true Jones Act seaman and put them on books with overtime, we could administratively take them out of their Jones Act status. I don't think that's right because I think there's a lot of other factors here. Now, he conceded. He admitted that he made a contribution to the running of the LHWCA. How long was he employed with you? He actually started with us in about 1996. I believe we brought the Coil Cat out here. We purchased it in 97. In 98, it went into its refurbishment. He was involved with assisting the chief engineer. So he was clearly working for you in the capacity of longshoreman. Initially, yes, ma'am, he was. For 40 years, and then 30 days before his accident, he has this kind of hybrid thing, but you don't change your records at all. Actually, he was aboard the vessel for closer to 60 days, and he'd already done 30 days of sea trial with that in order to qualify him for the unrated licensure by the Coast Guard. It sounds like he was an inchoate seaman. It was his intention to continue with the vessel. That project continued for 15 months. There's testimony on the record that but for his having been injured, he would have continued to work aboard that vessel, carrying passengers with safety functions, contributing to the function of the vessel. I believe that the fact of 30 days or 60 days, if he's a Jones Act seaman and was hurt the first day of his employment, he is still a Jones Act seaman. I think the chances you have to look over the duration of his employment, what his connection was, and his employment was four years, Yes, but the function changed significantly, Your Honor. They had him doing some maintenance functions when the vessel was not at sea. It sounds like he could be both. However, at the time of this injury, he's doing vessel work. I don't understand what difference it makes to you, financially, practically, economically, whatever. What difference does it make to the employer? I don't know that it makes a practical difference other than we struck a bargain with Mr. Jarrett, paid his cure to the tune of about $3,700, gave him a check for $10,800. Mr. Jarrett turns around to counsel and says, Wait, I want more. I suppose that does make a difference to us. How? We treated him fairly. You mean as an abstract proposition or in dollars and cents in some other way? Do your premiums go up? Is it a workman's comp problem? No, I don't believe the premium would go up. Certainly, the reserves might have to be readjusted. What does that mean, reserves are readjusted? When you have a risk in a claim, you have to put reserves on it to cover the claim. In this instance, the insurance company covering this risk is the same. It's essentially a captive insurance company. It is owned by the employer's parent company, Pacific Marine and Supply. Natitech Limited is one of the operating arms. And so I don't think it financially makes a difference. So it's just a matter of principle? You settled it and it should be over? Yes. There's nothing? The amount of money paid out by your corporation is not different at all depending on whether you win or lose this case? We haven't even gotten to those issues yet, Your Honor. We'll have to come back here. Just as we were in this courtroom three years ago to try Ian Jarrett's case before Judge Avery, who found Mr. Jarrett to be a seaman, Judge Avery made it very clear that he was only addressing in his case the jurisdictional issue. And that is because at the time we tried the case, Mr. Jarrett had his pending claim against Atlantis that still had not been resolved. So I can't even tell you what quantum of benefits he would be entitled to if you were to find him a longshoreman. So there's another step. What happens if we find that he's covered by the LLC? We'll come back before another administrative law judge. And what will the issues be? The issues will be to what extent is Mr. Jarrett entitled to medical benefits under the Act, and did Mr. Jarrett suffer any wage loss, which he did not. So he would not be entitled to permanent disability because permanent disability under the Longshore Act is determined as a function of your loss of wage earning capacity. Unless you settle it, you'll go back to a trial court on those issues. We will go back to a trial court. And assume, and it's a total assumption. There's no sort of factual implication for what I'm saying. But assume that we were to hold that he's covered under the LHWCA. You go to a trial, and he recovers, I'm choosing this number, out of a hat, $30,000. And you get an offset for the previous payments under the Jones Act. Yes. So there's a net loss to you somewhere in the less than $20,000. Yes, but of course if we come back to trial, I'll be arguing that the fact that the man continued to work. Would you let me ask a question, which is to say, and are you saying that there's no adverse economic impact on your company in that event? Or are you saying, oh, there is an adverse economic impact to that amount of money? If that were to be the finding, then clearly there'd be an adverse impact. I think that was the question that was being asked. Okay, I misunderstood. But that's why I say we don't know. We cannot quantify that yet because we have not had argument on the merits before a judge as to whether he has entitlement to medical care. Now this is not strictly relevant to your case, but I have to say I was puzzled by the fact that Judge Avery comes from Metairie, Louisiana. How does that work? Metairie, Louisiana? Yes. The Office of Administrative Law Judges in Washington, D.C. assigns administrative law judges from various jurisdictions on the mainland to ride circuit, basically. We do not have a sitting administrative law judge for maritime claims here in Honolulu. I see, so they can come from Louisiana. I've had judges from Boston. I've had judges from Louisiana. I've had judges from San Francisco. Because I sensed a certain sort of discomfort in Judge Avery with my circuit case law, in particular the Figueroa case. I couldn't speak to what Judge Avery is comfortable with, Your Honor. But he is an experienced longshore judge. I'm sure he is. I don't know on a test for what I have here in front of me. Anything further, Your Honor? Your Honor, it just seems like, I mean, I understand you're standing under a principal, but it just, I'll tell you my view. It seems clear to me that he was at least in the high grade and a longshoreman, and I don't understand why you're fighting this to the death and not trying to settle it. Your Honor, I can only follow my client's instructions. In this instance, a good faith settlement was entered into with the man, and we didn't hear of him until he later comes back and says, wait, I want more medical care now. If that's fighting on principle, perhaps there is cause still in this day and age to fight on principle rather than trying to put a monetary band-aid on everything. You're either a seaman or you're not a seaman. In this instance, I believe he met all of the traditional tests that qualify as a seaman. We're given the impression that Mr. Jarrett was the victim of sort of a fast and loose deal where they waived a bunch of money and a piece of paper in front of him without a lawyer, and he signed it, and that wasn't a good faith settlement. I don't believe there's anything on the record that will support that. That is mere speculation. $10,800 is not an insignificant sum of money to pay someone who's not losing any time from work, who's continuing to work with you. Well, that's very insignificant sum of money if someone's having back surgery. There is nothing on the record, Your Honor, to indicate that Mr. Jarrett needs surgery. He's never been told by a surgeon that he needs surgery. He sprains his back. It's as simple as that. What's on the record to say that the extent of his injury is he sprains his back? It's as simple as that. Well, again, we haven't gotten to the merits of the medical issues, but the fact that he continued to work for my clients until he voluntarily resigned and accepted new employment doing further marine maintenance work for Atlantis, which is a separate entity, I think that is a strong indicator that we don't have a back surgery case. All right. Thank you very much, counsel. Thank you. United States v. Navatrex was submitted. We submitted United States v. Cezanne on the brief, and United States v. San Miguel Torres as well. And we'll hear United States v. Shinohara.
judges: Trott, Wardlaw W. Fletcher